UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 22-11604-RGS

ROBERT PAGLIARULO, Jr.

v.

BANK of NEW YORK MELLON and
NEWREZ LLC d/b/a SHELLPOINT MORTGAGE SERVICING

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

August 15, 2023

STEARNS, D.J.

Plaintiff Robert Pagliarulo instituted this litigation (a ten-count Complaint) in the Essex County Superior Court to stay foreclosure on a rental property located at 36 Western Avenue in Saugus, Massachusetts. Pagliarulo complains that defendants Bank of New York Mellon (BNY Mellon) and NewRez LLC, doing business as Shellpoint Mortgage Servicing, have no standing to foreclose, intentionally thwarted his ability to modify his loan on the property, and failed to give him proper notice of the foreclosure sale. Defendants move for summary judgment on all claims asserting that BNY Mellon had standing to foreclose as noteholder and mortgagee; that while defendants repeatedly considered Pagliaro's applications to modify his loan,

he did not qualify for modification on "a severely-delinquent, seven figure debt." Defs.' Mem. at 1 (Dkt #19).

## BACKGROUND[1]

Pagliarulo took out a $550,000 loan on July 15, 2005, to purchase 36 Western Avenue in Saugus (the property). *See* Defs.' Ex. A-1 (Note.) He granted MERS as Nominee for Countrywide Home Loans a mortgage against the property that same day. *See* Defs.' Ex. B (Mortgage). MERS assigned the mortgage to BNY Mellon on August 13, 2008. *See* Defs.' Ex. C (Dkt #19-15, Aug. 13, 2008 assignment). BNY Mellon holds the promissory note. *See* Defs.' Ex. D, §§ 35 B-C (Dkt #19-16, Aff. at 1-2; Ex. A-1). Shellpoint services the loan for BNY Mellon. *See* Defs.' Ex. D, §§ 35B/C; Aff. at 1-2.

The property at 34 Western Avenue is a rental property owned by a trust of which Pagliarulo is a named trustee. The rental income from the property is deposited into the trust's bank account.

Pagliarulo made his last regular payment on the loan on February 25, 2011. Shellpoint sent Pagliarulo an application and document checklist to

---

[1] Plaintiff Robert Pagliarulo has failed to oppose defendants' dispositive motion or associated Statement of Facts (SOF). *See* Dkt # 20. Pursuant to District of Massachusetts Local Rule 56.1 "[m]aterial facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties."

enable him to apply for loss mitigation following his default. *See* Defs.' Ex. A-3 (Dkt # 19-4, April 1, 2019 corr.) at 1. The checklist specified that Pagliarulo must include with any application "two most recent bank statements for all open accounts." *Id.* at 5. The checklist also noted that Pagliarulo could list as a contributor [co-payor] in his application any "household member . . . who occupies the property as a primary residence." The application noted that "rental income for qualifying purposes will be 75% of the gross rent you reported reduced by the monthly debt service on the property, if applicable." *Id.* at 11.

      Pagliarulo applied for loss mitigation on or about September 5, 2019. He left the "rents received" income section blank and instead claimed $4,500 in "other" income. Pagliarulo also left blank his mortgage payments, property taxes, homeowners' insurance, and other expenses, and the household assets section (cash, checking accounts, savings accounts or owned real estate) and failed to append any bank statements. *See* Defs.' Ex. A-4 (Dkt #19-5, Sep. 5, 2019 appl. at 2-3). While the application was forwarded from a law firm, there was no signed authorization permitting Shellpoint to discuss the loan or application with the firm.

      Shellpoint responded to Pagliarulo's application on September 20, 2019, sending the correspondence to his last known address. Shellpoint

received an authorization from Pagliarulo dated September 25, 2019, to discuss the loan with his counsel – it noted that all contact with Waters & Associates would come from Waters and paralegals Lynette Dearborn and Colleen Johnson. *See* Defs.' Ex. A-6, (Dkt #19-7, Waters auth. at 1).

After explaining that he had no checking or savings accounts, Pagliarulo re-applied for loss mitigation on November 25, 2019. Shellpoint considered Pagliarulo for two loss mitigation options: a standard loan modification for owner-occupied properties and for a Massachusetts Principal Reduction Loan Modification (MPRLM). *See* Defs.' Ex. A; Shellpoint Decl. ¶ 15. As the property was rented out by the trust, it was ineligible for an owner-occupied property modification. Pagliarulo also did not qualify for a MPRLM because his income was not high enough to cure his significant arrearage to achieve an acceptable debt-to-income ratio. *See Id.;* Ex. A-9 (Dkt #19-10, Dec. 14, 2019 payoff at 1). Shellpoint sent Pagliarulo a payoff statement indicating that he owed nearly $1,000,000 in unpaid principal, interest, escrow (taxes and insurance) and other charges and owed payments dating back to 2010. *See Id*. at 1-3.

Pagliarulo reapplied on January 29, 2020. *See* Defs.' Ex. A-10 (Dkt # 19-11, Jan. 29, 2020 appl. at 1). He included in his application a purported contributor, Robert Pagliarulo III, who he claimed would help pay the

4

mortgage. *See Id.* at 20.  As before, Pagliarulo was ineligible for a MPRLM because his household debt-to-income ratio was too high.  Shellpoint also considered whether Pagliarulo might be eligible for a standard investor modification (as he did not reside at the property).  It determined that his debt-to-income ratio was still too high. Shellpoint denied Pagliarulo's loss mitigation application on March 12, 2020.  *See* Defs.' Ex. A-11 (Dkt #19-1 ¶ 18, March 12, 2020 corr. at 1).  Shellpoint received no further loss mitigation applications from Pagliarulo after the March 12, 2020 denial.

On August 4, 2022, with the loan remaining in default, Shellpoint and BNY Mellon scheduled the property for foreclosure on September 12, 2022, at 1:00 p.m.  *See* Defs.' Ex. A-12 (Dkt # 19-13, Aug. 4, 2022 corr. at 1 & 4). BNY Mellon sent a notice of the sale to Pagliarulo's last known address.  *See* Defs.' Ex. A-12 (Dkt # 19-12, Aug. 4, 2022 corr. at 1 & 4 at 1); Defs.' Ex. A-10 (Dkt #19-11, Jan. 29, 2020 appl. at 1).  Pagliarulo filed a Complaint in Essex Superior Court  on September 2, 2022. Seeking to stay the foreclosure.  Dkt #7 at 6-30 (Complaint).  The Complaint contained a request for injunctive relief (Count I); equitable claims for promissory estoppel (Count IV) and specific performance (Count VII); common-law claims for breach of contract (Count II), breach of the covenant of good faith and fair dealing (Count III), negligent misrepresentation (Count V) and fraud and misrepresentation

(Count X); and statutory claims under Massachusetts Gen. Laws, ch. 244, § 35A (Count VI) and the Consumer Protection Act, Chapter 93A (Count VIII). In response to the litigation, BNY Mellon postponed the September 12, 2022 foreclosure sale, but removed Pagliarulo's litigation to the U.S. District Court on September 22, 2022. It eventually foreclosed on the property on December 12, 2022.

## DISCUSSION

Summary judgment is appropriate when, based upon the pleadings, affidavits, and depositions, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For a dispute to be "genuine," the "evidence relevant to the issue, viewed in the light most flattering to the party opposing the motion, must be sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995) (citation omitted). "To succeed, the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990).

First the court considers Pagliarulo's undocumented assertions regarding chain of title and defendants' standing to foreclose. As set out in its unopposed SOF, defendants provide evidence that BNY Mellon is the

holder of both the Note and the Mortgage (as the assignee of the original mortgage beneficiary, MERS). *See* Def.s' Ex. C. "[A] mortgagor does not have standing to challenge shortcomings in an assignment that render it merely voidable at the election of one party but otherwise effective to pass legal title." *Culhane v. Aurora Loan Servs. of Nebraska*, 708 F.3d 282, 291 (1st Cir. 2013), quoted in *Wells Fargo Bank, N.A. v. Anderson*, 89 Mass. App. Ct. 369, 372 (2016). "[W]here the foreclosing entity has established that it validly holds the mortgage, a mortgagor in default has no legally cognizable stake in whether there otherwise might be latent defects in the assignment process." *Bank of N.Y. Mellon Corp. v. Wain*, 85 Mass. App. Ct. 498, 502 (2014). Defendants similarly provide documentation that Shellpoint services the loan. *See* Def.s' Ex. D. There is no dispute that Pagliarulo made his last regular loan payment on February 25, 2011. Nor can it be disputed that BNY Mellon had standing to foreclose on the property.

It is well-settled law that once a mortgagor defaults, defendants have no contractual obligation to negotiate or modify the underlying loan agreement. *See Peterson v. GMAC Mortg., LLC*, 2011 WL 5075613, at *6 (D. Mass. Oct. 25, 2011). There is nothing in the parties' mortgage contract that dictates otherwise. While Pagliarulo claims that defendants made a binding offer to modify the mortgage terms, he offers no evidence to support the

7

claim. Conversely, in defendants uncontroverted SOF, they outline the assistance Shellpoint provided to Pagliarulo in completing his loss mitigation application. *See* Def.s' SOF ¶¶ 9-27. They also explain why Pagliarulo's income failed to meet the acceptable debt-to-income ratio on a nonowner-occupied property and why his application was ultimately denied. *Id.* ¶¶ 28-31.

Pagliarulo's remaining common law and statutory claims similarly focus on defendants' purported misrepresentation/fraud/bad faith in the loan modification process.[2] Without support, material facts to counter defendants' unrebutted SOF, these claims also fail.

## ORDER

For the foregoing reasons, defendants' Motion for Summary Judgment is <u>ALLOWED</u>. The court enters judgment against plaintiff on all claims and

---

[2] The Complaint asserts two equitable claims for promissory estoppel (Count IV) and specific performance (Count VII). Both claims in the first instance require reliance on misrepresentations of past or present facts; promissory estoppel entails detrimental reliance on statements of future intent. *See Boylston Dev. Grp., Inc. v. 22 Boylston St. Corp.*, 412 Mass. 531, 543 n.17 (1992). Again, Pagliarulo presents no evidence to support his bald assertions of defendants' bad faith.

instructs the Clerk to close the case.

                                        SO ORDERED.

                                        <u>Richard G. Stearns            </u>
                                      UNITED STATES DISTRICT JUDGE